Mr. Watson. Thank you. May it please the court, I'd like to reserve two minutes, please, for rebuttal. Thank you. I am Norman Watson, I do represent Robert Fenyk, the appellant in this case. I won't go into the facts because we're here on legal issues, but I will make the point that Rob Fenyk was fired because his employer suspected him or knew that he was a recovering alcoholic based upon one email where he mentioned the word sobriety. We contended in the arbitration process that he was terminated because of either retaliation or discrimination against him because of his disability. The arbitration ensued in 2012 and the arbitrators awarded Mr. Fenyk $600,000 plus attorney's fees and costs and fees. The district judge vacated the award on the premise on her conclusion that we breached the statute of limitations in the controlling state of Florida and that we had only brought the case under Vermont law and the parties had agreed that Florida law would apply. There is an agreement that Mr. Fenyk and the company both agreed to that in fact made it mandatory that Florida law applied. On the issue of the statute of limitations, Mr. Fenyk filed his arbitration petition in The Phillips case, which the appellee refers to as controlling here of the Florida Supreme Court, was not handed down until May of 2012. Prior to the Phillips case, the rule in Florida was that there was no statute of limitations for civil rights. Can I just ask a factual question about when you say May of 2012, it was handed down after the award was issued? No, it was handed down after. I know it was after the filing, but I think the decision was in May. Also, my understanding is that it was after the award was issued, but do you know? I don't remember that exactly, but I think it was 2013 when we went through the arbitration, but it might have been February of 2012, I should have that in my mind, but I don't. Good question. Counsel, would you agree that the arbitrators exceeded their power as arbitrators if they awarded damages for a claim that was never before them, which is really what's being argued in this case? If that is what happened, would you agree that they exceeded their powers if they did something like that? I don't think so, Judge Lippitz, because the national policy encouraging and undergirding the arbitration process, according to the case decisions, permits arbitrators a wide range of laws that they can apply to particular cases, and in fact, we cited in our brief case, the Mendez case, which indicated that arbitrators can import law into a proceeding, and so even if the Vermont statute were the only statute upon which the arbitration had ensued, we don't know what the arbitrator's thinking was. We don't know what the process was, because they didn't hand down a written decision, and so they may have made their decision based on Vermont law or Florida law, but the fact is that... Well, you were, excuse me, you were sufficiently concerned about the nature of the claim from the arbitrator. You actually, post-hearing, you sought, you filed a request to amend to put a, excuse me, to put a Florida claim before them, and they rejected that, isn't that correct? That is absolutely correct. So the only, excuse me, so the only claim for disability discrimination that could have been before them would have been the Vermont claim that you initially brought. Would that be the sort of the logical inference of the posture of the case at that point? It might be a logical inference, but in actuality, I think that the arbitrators are permitted to consider a broad range of legal premises upon which they can make their decision, and they may have made it on the Vermont law or on the Florida law, but the fact is that the parties agreed that Florida law would apply. Could you dispel the theory of how the Florida claim could have been before the arbiter? I noticed the ward mentions the attorney's fees provision under the Florida Act, which I guess could be some indication that the arbitrator thought that they had a Florida claim before them. Could you just spell out, in light of the fact that the Florida claim was put forward in that motion and rejected by the arbitrator, what would be the theory as to how a Florida claim was before them, putting aside the Vermont claim? That the arbitrators were free to consider whatever law they felt was necessary and realistic, and that the Florida law was the law that the parties had agreed to, and therefore it was part of the case all along, and as far as the amendment is concerned, my understanding of the FINRA procedural laws is that we could not amend the proceeding once the panel was seated, and the panel was seated very early, of course, and after that point, we could not amend. Nevertheless, we thought that it might be appropriate and useful to try to amend it at the end of the process, even though it was clear to us that they would be applying Florida law. So the bottom line here for us is that the arbitrators need to be free to consider whatever laws they believe are relevant and apply to the case, and that's what the case law says. Even if the judges disagree with the process or the rationale, they still must abide by the freedom that the arbitrators have. But they can't manifestly disregard the law. Where does the line get drawn? It's case by case. I'm not sure that manifest disregard is still the test, but nevertheless, as I've studied the cases, it's case by case. There are some cases where the arbitrators awarded more than what the party asked for, and that was deemed to be – the arbitrators were deemed to have exceeded their authority. But there are other cases where the arbitrators brought in law from other jurisdictions to consider relevant to the parties, and that was not deemed to be exceeding the authority. Just to go back to an earlier question, but in a slightly different way, if the arbitrator had issued a decision and the decision said that Vermont law incorporates Florida law and on that basis we award, you know, for your client, would that be something that we'd be bound to accept? I think so, yes, sir. But your case doesn't depend on that conclusion, or it does? It might depend on that conclusion, but as I say, unfortunately, we don't know what their rationale was because there was no written decision. And I see my time is up. So if they had just, without any hint of an explanation, if they had just come out and compensatory damages, that would have been all they had to do, and there could be no inquiry into the basis for their decision, is that – Yes, sir. So it's – this has become problematic because we have some hints as to what they did and those hints suggest that they may have disregarded the law, is that the problem here? But we should – since they could have issued a decision without any hint of an explanation, we shouldn't care if those hints suggest that they were applying a very curious brand of law. We shouldn't worry about that, is that correct? Well, if you're – the hints you're referring to is the reference to the statute providing for attorney's fees. That's certainly a pretty broad one, yeah. Yes, that's true. Well, what does that say? It says that they were applying Florida procedural law, and that's what they may do or may not do. I mean, the cases are pretty clear that the arbitrators apply the procedural law of the jurisdiction where parties have agreed it will apply, and that's – I understand what you're saying about the hints. The hints are there, but the fact is that the parties had agreed to apply Florida law, and that's what appears to be what the arbitrators did. Just if I might, just one further question. So you say it's – the more consistent you would be that they were applying Florida law throughout. If that's so, there seems to be a serious statute of limitations problem, but we shouldn't even – and that's what Judge Zobel indicated, but we shouldn't even be concerned about that, that there might be – I'll put it differently. If we conclude that the best reading of what they did with respect to the basis for the should we then just disregard the whole statute of limitations problem and say, well, it doesn't matter? Even if they made an award when the statute of limitations would have precluded it, that doesn't matter either from your point of view? If that's a hypothetical question, my answer is no, we should not disregard it. But the actuality is, as I mentioned before, that the decision in the Phillips case came down after we filed the petition for arbitration, and I don't believe Phillips would be applied retroactively. So there was no statute of limitations in Florida. May it please the Court, I'm Sandra Graham and I represent Raymond James in this matter. I think that the Court hit the nail exactly on the head. The arbitration award is clear in the four corners of the award. You don't have to go outside the award to figure out what the arbitrators did. The arbitrators said, after having asked the parties to brief what was the appropriate law, they decided that the parties' choice of law for Florida law in their contract, the independent contractor contract, would govern the relationship between the parties. They also decided, and this motion was made simultaneously with the briefing on which law would apply, that Mr. Fennick's motion to amend his claim to include Florida statutes and other basis for alleged discrimination would be denied. So they consciously decided to deny the ability to amend to include Florida law and other laws. He also requested in the amendment the right to add in a cause of action under a New York statute and under the federal statute. And the argument that he put forth to the panel was the contract was either signed in New York or Florida, but clearly not in Vermont. And so under Vermont procedural rules, one of those two jurisdictions for the governing law, he would defer to the panel to determine which, if any. And also that all of them sort of encapsule the federal law, and so the federal law should be the one that's also amended. And he disallowed the ability to put all those different claims in? Correct. We responded by saying that to amend a claim after the proceedings, after all the evidence had been put into the arbitrator for review and the witnesses had been testified, would be prejudicial to Raymond James and, in fact, was contrary to the code. The code does not prevent you from amending your claim. So what was being arbitrated in your view when you were spending this time arbitrating something after this motion had been denied? Because you say Florida law, everybody agreed was going to apply. Right. He then put forward a motion to add some claims. Those were all rejected. Then an arbitration ensued. Actually, Your Honor, the arbitration took place first. Well, that too. But when you were arbitrating, what did you think you were arbitrating about? I was arbitrating exactly what the contracts said we were going to arbitrate. According to the submission agreement, the parties put before the panel what's presented in their claim, their answer, their counterclaim and cross claims. What was presented in the claim, the only claim that survived through the arbitration to the end, in fact, to our closing arguments, was one claim based upon the Vermont statute for discrimination. And what did you understand to be the significance of the agreement between the both of you that Florida law would apply? That bringing a claim under Vermont law could not possibly bind my client because the only possible claim that could exist would have to survive under Florida law. So what did you then think you were arbitrating? I thought that we were arbitrating whether the Vermont statute could possibly apply because that was the only cause of action. Even though you would agree that Florida law was going to apply? That's why I just don't follow. Oh, OK. So let me be clear. Yeah. I believe that Florida law absolutely governed the party's relationship. However, the only cause of action asserted in the statement of claim and throughout the proceeding that started in 2012 and ended with a hearing in 2013 was a claim for a Vermont statute. There was not even a sort of the, you know, the typical attorney drop and such other equitable and just relief as the arbitrators may find appropriate. Nothing like that existed. There was one claim for the violation of a discrimination Vermont statute. That was the only thing at issue in this arbitration. So in that whole arbitration, all that you were talking about was what Vermont law says. Right. Well, we actually were trying the factual issues about whether there was a discrimination or not. The evidence didn't really play into whether it was Vermont law or Florida law. It was the arguments that counsel made that determined whether it was Vermont law or Florida law. At the beginning of the hearing, Miss Fenwick's counsel asked the arbitrators if he could amend. Under the rules, there is a procedure for amending after a panel has been appointed. And the procedure is you make a motion. The other side gets to object. If it's considered to be prejudicial against the party, the arbitrators are not supposed to amend. The panel said, can't do that now. At post hearing, on a post brief, you can make a motion to amend and counsel can then have the opportunity to brief why it would be prejudicial for a client to have to respond. So in post hearing briefs, there was in fact a motion made to amend the statement of claim for the very first time to attach New York, Florida, and federal statutes. We responded by saying, contrary to code, prejudicial. We told you at the beginning of the case in our answer that Florida law applied and now is not the time to amend. Counsel, I'm pretty confused as well here. I mean, as to what you thought you were litigating before the arbitration panel, it sounds to me like the way you're saying you objected to the motion to amend, you're saying the prejudice would be now the suggestion is that these causes of actions from other jurisdictions would now be part of the case when we thought we were litigating a claim under Vermont law. That is correct. Well, then if he says his only claim was under Vermont law, you say you understood that that is the claim was being litigated. Why doesn't follow from that that the arbitrators made an award under Vermont under Vermont law? Because I think that's the case. Sounds like Judge Zobel was was wrong. Well, Your Honor, I think Judge Zobel was absolutely right, because to say that a cause of action that they were not permitted to respond to and defend during the course of an arbitration is inherently unfair. But the entire point of permitting us to answer a claim, if you bring a claim and say this statute, statute A, B and C applies, I get then the opportunity to say it doesn't apply because of these various reasons. I get to brief it thoroughly. I get to present my case in that fashion. If everything has been done with you saying that the operative statute is statute C and at the end of the case, you now say I want it to be A because I've decided that that would be better for me. I am clearly prejudiced because I did not have the opportunity then to address these issues throughout the course of the litigation and throughout the hearing, the evidentiary hearing. Yeah, that's not what happened, apparently. That is what happened, Your Honor. Are you saying that the arbitrator's award was based on Florida law? I'm saying it was based on Vermont law. I'm saying that the arbitrators did one of two things. Either they awarded damages based on Florida law, which was never before them, and therefore they exceeded their powers, or they awarded. The reason it was never before them is because you're saying that the agreement on Florida law clearly was not an agreement to apply the Florida civil rights statute. That is correct. Okay, so I got that theory. Okay, so that's why. And no claim was ever brought under Florida law. Well, only if we agree with you that the agreement to apply Florida law didn't count as a conclusion that there was a Florida statute before them. Well, it was not on my basis. It was not because at the very same time, we were briefing the issue on whether it's going to be amended to include Florida law. So there was no presumption that, of course, if we say the choice of law provision is Florida law, that means that notwithstanding what was pled as the cause of action. So the arbitrator was then deciding what? They were deciding two things. One, could this claim be amended to include Florida law? And two, would the appropriate rule that governs the party's actions be Florida law? At the time of the award, what did you think? What were they doing? What was the arbitrator deciding at the time of the award? Well, they had previously decided that the case could not be amended, and they had previously decided that Florida law governed the relationship with the parties. And I thought, therefore, that it would be impossible to award a claim, an award on behalf of Mr. Finick, because the two were incongruent. You couldn't have both in the same arbitration. They specifically prohibited him from amending his claim. So how do we know that what the arbitrators did was not simply to say, there's only a claim brought under the Vermont statute here. The parties have agreed that Florida law applies, not Vermont law. So, therefore, to the extent or in any instance where the Vermont law and the Florida law might come up with a different result, we're going to apply Florida law. How do we know they just didn't do that? Well, Your Honor. Which would explain the attorney's fees. And it would actually explain the award, too, if they thought that Vermont law and Florida law were consistent with respect to the substance. Arbitration is, in and of itself, a creature of contract. And pursuant to the contract and the submission agreement that Mr. Finick signed, he agreed that what would be before the arbitrators would be the claims that he asserted in his statement of claim. In his statement of claim, the only claims he asserted was Vermont law. At no time did he assert... I just said, how do we know that the arbitrators didn't view that as a claim under the Vermont statute, but will apply Florida law to the extent that Vermont is inconsistent with Florida law? But I don't believe they could do... How do we know that's not what they did? That would be exceeding their powers, Your Honor. Why? Because they weren't, they were not asked to make a ruling under Florida law. They were not asked to rule in accordance with the statement of claim as to whether Florida law controlled... They granted a motion by the parties to apply Florida law, not Vermont law. The, the, the, the, the, it was actually a briefing, not so much a motion. And the briefing was asked, the question was asked by the arbitrators, please brief the issue as to why public policy does not dictate that Vermont law controls as opposed to Florida law. We briefed that issue. Mr. Finick, on the other hand, said, uh, I think that maybe the contract choice of law provision is the appropriate choice of law provision, either that or New York. We leave it to the arbitrators to determine. So it wasn't quite a motion to apply Florida law, but that's sort of the factual background as to why Florida law ended up being applied. So it may have only been a sort of a standard choice of law analysis? It was absolutely a standard choice of law analysis. That's the only argument we briefed because that's what we understood the arbitrators to be directing us to do. Thank you. Thank you, Your Honor. You reserve two minutes if you want. During the arbitration, there was lengthy discussion about the nature of the civil rights laws in Vermont, and Florida, and New York, and federal. And we ventilated those issues back and forth. And my sense was that the arbitrators felt that these were generic civil rights statutes, and their provisions were all very similar. And we proceeded on that basis. Throughout the process, we presented evidence concerning the discrimination and the retaliation relating to the dismissal of Mr. Fennick by Raymond James. And Raymond James defended it vigorously. At all times, the arbitrators' questions, the counsel's presentations, the witnesses' presentations was a generic civil rights statute. And so about the questions that you were asking, it was very clear that there was probably no difference between these statutes. And in my studies of it, and I presented this, there was no difference. The analysis was the same. The typical McDonald-Douglas analysis was the same. And so essentially, what we were doing is applying the facts to the law, whether it was Florida or Vermont. And of course, as you pointed out, and I pointed out, we don't know what their actual rationale was. But even if it was not a clear rationale, their decision still has to be upheld because of the national policy throughout the case law and throughout the statutes that arbitrators are free to make their decisions as they see fit based on the evidence presented at the arbitration. Does the record include a transcript of the proceedings before the arbitrator? We have all of that in the record? Yes, sir. So we'll be able to get a sense of what the byplay was and perhaps what they were thinking in response to the arguments? Yes, sir. Okay, good. Thank you very much.